**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00999-CR

———————————

**DONALD NEALEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1481930**

---

## MEMORANDUM OPINION

A jury found appellant, Donald Nealey, guilty of the offense of capital

murder.[1]  Because the State did not seek the death penalty, the trial court assessed

---

[1]  *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2016).

his punishment at confinement for life without parole.[2] The trial court further found that appellant used a deadly weapon, namely, a firearm, in the commission of the offense. In three issues, appellant contends that his conviction is "void," as the record does not affirmatively show that the visiting trial court judge took the constitutionally-required oaths of office; the trial court erred in denying his motion for an instructed verdict; the non-accomplice evidence is insufficient to connect him to the offense; and the trial court erred in not instructing the jury on the lesser-included offenses of murder and robbery.

We affirm.

## Background

Lawrence Scott testified that on the evening of March 6, 2014, the complainant, Stanly Kumbanattel, stopped by to visit him at his home at the Little Nell Apartments in Houston. He noted that the complainant, who was a medical student from Dallas, was in town for the weekend to celebrate his birthday with his family. Shortly after the complainant left, Scott learned from a neighbor that there had been a shooting outside his apartment building. Several days later, Scott learned that it was the complainant who had been shot and killed.

Jerome Monroe testified that on the evening of March 6, 2014, while sweeping his garage at the Little Nell Apartments, he saw the complainant running past his

---

[2] *See id.* § 12.31(a) (Vernon Supp. 2016).

garage. "[A]bout 10 seconds later," he saw three other men, wearing "dark colored" "hoods," chasing him. A few seconds later, he heard "gunfire," "saw the light from the gun," and saw the complainant fall down. Afterwards, Monroe saw the men get into the complainant's car, a black Acura. The driver drove the car near the complainant, where one of the men got out and shot the complainant again. The shooter then got back into the car, and the driver drove away.

Shejuan Bumpers testified that on the evening of March 6, 2014, she was at her home at the Little Nell Apartments, with her mother, Sheryl Mitchell; her sister; and a couple of friends. After hearing gunshots, she looked out the window of her second-story apartment and saw a man wearing khaki-colored pants and a blue "hoodie" running to a black Acura. As the man ran past her, Bumpers saw his eyes. She then ran outside and saw someone lying on the ground. The Acura returned momentarily, then sped away. And Bumpers called for emergency assistance.

Mitchell testified that she and Bumpers were sitting down to dinner when she heard a "pop, pop" sound coming from outside. She then heard, "pow, pow, pow, pow, pow." And she went to the balcony of the apartment and saw someone running by wearing a hoodie. When Mitchell asked if he was "okay," he looked away and did not answer. She also saw someone lying on the ground. She and her other daughter then went running downstairs, outside, and over to the complainant, where several other people were beginning to gather. Someone yelled, "Here they come!"

3

A black car appeared, and everyone started running. After the driver drove past the complainant, he drove away.

Houston Police Department ("HPD") Officer D. Gwosdz testified that at 8:38 p.m. on March 6, 2014, he was dispatched to the Little Nell Apartments on the West Sam Houston Parkway in Houston to investigate a shooting. There, he found the complainant lying face up on the pavement, not breathing, and surrounded by blood.

HPD Officer M. Perez testified that when he arrived, officers on the scene directed him to Building 11. There, he found, located near the complainant, a white glove and eight bullet casings that he identified as having been fired from a 9-millimeter firearm. They noted numerous bloody tire tracks through the scene. He also noted that the complainant did not have a wallet or car keys on his person.

HPD Sergeant R. Bridges testified that at 6:00 a.m. on the day after the shooting, March 7, 2014, while working the homicide division hold desk, he received a telephone call from appellant. Appellant said that he had learned that an acquaintance or friend of his had been killed and he realized that his identification was in the friend's car. He explained that he was out on bail, was afraid that he might be connected to the death, and wanted to "clear the air."

HPD Sergeant E. Cisneros testified that he, through his investigation, learned that witnesses at the Little Nell Apartments had seen a four-door, black Acura

leaving the scene. Investigators had recovered a four-door, black Acura from a House of Pies restaurant, located seven miles from the crime scene, that had been robbed approximately one hour after the shooting. And HPD dispatchers had received calls for emergency assistance at 8:17 p.m., from the apartments, and at 9:42 p.m., from the restaurant.

Sergeant Cisneros went to the HPD vehicle impound lot to examine the Acura and learned that it was registered to the complainant. He accessed the complainant's driver's license photograph and noted that it matched the images of the complainant in the crime scene photographs. Cisneros found, on the driver's side of the center console of the Acura, a wallet containing a bank card and a State of Texas identification card belonging to appellant and stating that he lived at Little Nell Apartments. Cisneros also confirmed that the telephone call that Sergeant Bridges had received the day after the murder was from appellant.

Sergeant Cisneros further testified about the surveillance videotapes and still photographs, which the trial court admitted into evidence, from the robbery at the House of Pies restaurant. He identified the complainant's car being driven into the restaurant parking lot and two black men getting out of the complainant's car. The men wore masks, partially hiding their faces, and hooded sweatshirts. The driver dressed was in black, and the passenger in blue. Cisneros identified the man dressed in black as appellant and the man dressed in blue as appellant's co-defendant,

5

Marquis Davis. The videotapes show the men, each holding a firearm, entering the House of Pies restaurant at 9:41 p.m., holding the workers and patrons at gunpoint, and taking their money, wallets, and cellular telephones. Cisneros identified appellant's weapon as a semi-automatic firearm and Davis's weapon as a revolver. The videotapes and photographs show that, at times during the robbery, Davis's mask fell down and revealed most of his face. The men are also shown running through the kitchen and out through the back door of the restaurant. HPD Officer R. Gonzelez testified that officers subsequently arrested Davis in the attic of a nearby residence.

Anthony Green testified that he was a patron at House of Pies restaurant on the night of the robbery. He noted that the man in the black hoodie used "either a 9-millimeter or 10-millimeter" semi-automatic firearm. And he identified appellant in court as one of the assailants.

HPD Investigator V. McLean testified that Bumpers identified the black Acura recovered from the House of Pies restaurant as the car that she saw at the Little Nell Apartments at the time of the shooting. And Bumpers identified Davis from a photographic array as the man that she saw running through the apartments after the shooting. McLean also interviewed Davis, and he identified appellant as having been involved in the shooting of the complainant. Davis also admitted that his car, a Mercury Grand Marquis, had been left at Little Nell Apartments. HPD

Officer A. Looney testified that, after the shooting, officers found a 1995 Mercury Grand Marquis parked at the Little Nell Apartments, near Building 11.

C. Bassett, a Houston Forensic Science Center ("HFSC") firearms examiner, testified that officers recovered eight casings that had been fired from a 9-millimeter firearm. He noted that, "usually whenever cartridge cases are on the ground," as here, "it's from a semi-automatic." Bassett explained that when a semi-automatic weapon is fired, the cartridge casings are extracted and ejected from the firearm. When a revolver is fired, however, the casings stay in the firearm and must be manually removed.

M. Hines, an assistant medical examiner at the Harris County Institute of Forensic Sciences, testified that the complainant suffered eleven gunshot wounds from "8 bullets." A bullet was fired into the complainant's neck, which perforated his jugular vein, carotid artery, and a portion of his vertebral column. He was also shot in the left and right sides of his chest and in his abdomen. And Hines opined that the complainant died from multiple gunshot wounds.

Marquis Davis testified that although the State had charged him as a co-defendant for the offense of capital murder of the complainant, it, in exchange for his guilty plea and agreement to testify against appellant, agreed to reduce the charge to aggravated robbery and recommend that his punishment be assessed at confinement for fifty years. Davis further explained that on March 6, 2014, he

7

picked up appellant from the Rainy Meadows Apartments and they met up with some friends at a nearby convenience store. Appellant told Davis that "the police took $2,000 from him" and he needed to meet up with a girlfriend to get some money. He then got into the driver's seat of Davis's Mercury Grand Marquis and, with Davis in the passenger seat, drove to the Little Nell Apartments. When they arrived, Davis waited in the passenger seat while appellant went to get the money.

About five minutes later, however, appellant "came back around the corner" with the complainant in a "headlock." All Davis could hear were "curse words," and he got out of the car to see what had happened. Davis did not see "any facial expressions" on appellant "to say that the man did something to him," and the complainant was "really quiet." Appellant had a gun pointed at the complainant, who was bleeding from his nose, said that he was home from college and kept asking, "Please, can you please let me make it?" Davis urged appellant to leave the complainant alone, but appellant refused. When Davis started to walk back to his car, he heard a "gunshot go off." Appellant shot the complainant in the stomach and, while the complainant was lying on the ground, appellant stood over him and "kept shooting him in his body," "more than five times." Although Davis "took off running," appellant drove up in the complainant's car, and Davis entered it on the passenger side.

8

Davis asked appellant why he shot the complainant, and he replied that he wanted to go and rob the House of Pies restaurant. Appellant drove to the restaurant and then drove around the perimeter for several minutes. Davis said that he urged appellant to leave because there were too many people inside. Appellant insisted that it would be quick, so Davis agreed to participate. On the way to the restaurant, appellant gave Davis a .38 caliber revolver.

Once inside the restaurant, Davis stood by the front door while appellant, who was wearing plastic gloves on his hands and a black bandana over his face, jumped the counter. Davis pointed his weapon at patrons, forcing them to gather in one place. And he fired his revolver into the ceiling because they "kept talking like they didn't know the place was getting robbed." As Davis and appellant loaded up their wallets and cellular telephones, Davis saw through the window that a police patrol car was approaching. He and appellant then ran out through the back door of the restaurant, and Davis paused during his run to remove his shoes because they had blood on them from the shooting at the Little Nell Apartments.

## Judicial Qualification

In his first issue, appellant argues that his conviction is "void" because it was rendered by a legally unqualified visiting trial court judge. He asserts that "nothing in the record shows" that the visiting trial court judge[3] took the

---

[3] The Honorable Leslie Yates, retired Justice, Fourteenth Court of Appeals.

"constitutionally-required oath of office" before sitting as a visiting judge on his case. The State argues that appellant's conviction is not "void" because the visiting judge, after being first elected in 1994 to the Fourteenth Court of Appeals, took the constitutionally-required oaths of office[4] and these "oaths remain effective and continue to authorize her actions as a visiting judge assigned to a district court." *See* TEX. GOV'T CODE ANN. § 75.001 (Vernon 2013). Appellant responds that a retired court of appeals justice who elects to continue serving as a visiting judge is "constitutionally required to execute *new* oaths before acting as [a] visiting judge[]." (Emphasis added.)

Although appellant did not raise this issue in the trial court, a "challenge to [a] trial judge's legal qualifications may . . . be raised for the first time on appeal." *Wilson v. State*, 977 S.W.2d 379, 380 n.3 (Tex. Crim. App. 1998); *Murphy v. State*, 95 S.W.3d 317, 320 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd).

This Court, in *Murphy*, noted that "it has long been a 'cardinal rule' of appellate procedure in Texas that we 'must indulge *every* presumption in favor of the regularity of the proceedings and documents' in the trial court." 95 S.W.3d at 320 (quoting *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975)). "The presumption of regularity is a judicial construct that requires a reviewing court, 'absent *evidence* of impropriety,' to indulge every presumption in favor of the

---

[4] *See* TEX. CONST. art. XVI, § 1(a) (oath of office), (b) (anti-bribery oath).

10

regularity of the trial court's judgment." *Id.* (quoting *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000)). And we have "consistently upheld the 'presumption of regularity of the judgment and the proceedings absent a showing to the contrary.'" *Id.* (quoting *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). Thus, the burden is on an appellant to overcome the presumption. *Id.*

Also in *Murphy*, this Court held that the presumption of regularity of trial court judgments and proceedings applies to appellate challenges of visiting judges for alleged failures to take their constitutionally-required oaths. *Id.* And an appellant who makes such a challenge "must make a prima facie showing that the trial court judge did not take the required oaths before we will consider the issue on the merits." *Id.* "[A] lack of filing of any required oath is not proof, in itself, of the failure of the judge to take the constitutionally-required oaths." *Id.* n.3.

Here, appellant simply alleges, without citing any evidence in the record, that the visiting judge did not take the constitutionally-required oaths of an appointed officer before presiding over the trial in his case. *Cf. Prieto Bail Bonds v. State*, 994 S.W.2d 316, 318 (Tex. App.—El Paso 1999, pet. ref'd) (setting out evidence of judge's history). This is insufficient to overcome the presumption of regularity. *See id.* (bare allegation visiting judge did not take required oaths failed to overcome presumption of regularity); *see also Barnes v. State*, No. 03-13-00434-CR, 2016 WL

11

3917126, at *7 (Tex. App.—Austin July 13, 2016, pet. ref'd) (mem. op., not designated for publication) (lack of filing of any required oath not proof, in itself, of retired, visiting judge's failure to take constitutionally-required oaths); *McMillan v. State*, No. 13-11-00123-CR, 2012 WL 3241830, at *3 (Tex. App.—Corpus Christi Aug. 9, 2012, no pet.) (mem. op., not designated for publication) (allegation retired judge failed to take required oath insufficient to overcome presumption of regularity); *Pease v. State*, No. 03-06-00369-CR, 2007 WL 2274879, at *5 (Tex. App.—Austin Aug. 9, 2007, no pet.) (mem. op., not designated for publication) ("Without citing to any proof in the record, Pease merely alleges that Judge Bender [who was retired and sitting by assignment] failed to take the required oaths. That is not enough to overcome the presumption of regularity."); *Davis v. State*, 227 S.W.3d 766, 768 (Tex. App.—Tyler 2005) (no evidence of county attorney's failure to subscribe to constitutionally-mandated oath of office and anti-bribery oath), *aff'd*, 227 S.W.3d 733 (Tex. Crim. App. 2007); *Simpson v. State*, No. 05-02-01203-CR, 2004 WL 1232832, at *3 (Tex. App.—Dallas June 4, 2004, no pet.) (not designated for publication) (defendant did not meet his burden to overcome presumption trial judge took constitutionally-required oaths).

In support of his argument that he "has no burden to make a prima facie showing" that the visiting judge did not take the constitutionally-required oaths because, without a record affirmatively showing that she "took an oath of office,"

12

his conviction is simply "void," appellant relies on *Herrod v. State*, 650 S.W.2d 814 (Tex. Crim. App. 1983).

In *Herrod*, the Texas Court of Criminal Appeals examined the *statutory* "authority of a retired district judge to act in the [c]ounty [c]riminal [c]ourt." *Id.* at 815–17. The court observed that the statute "made clear that the regular judge must be absent, disabled, or disqualified, before a retired judge may be appointed." *Id.* at 817 (applying former TEX. REV. CIV. STATS. art. 1970-31.30 sec. 1(a) (repealed)). Further, the statute expressly required that: "A retired judge appointed to sit for a regular judge under the provisions of this Act *shall* execute the bond and *take the oath of office which is required by law for the regular judge for whom he is sitting*." *Id.* at 816 (quoting former TEX. REV. CIV. STATS. art. 1970-31.30 sec. 2 (repealed)) (emphasis added). There, because the appointment of the retired district judge was predicated on statutory requisites that were not met, the appointment lacked statutory authorization. *Id.* at 818–19. And the court reversed the defendant's conviction "for the failure of the record to show by what authority the retired district judge presided." *Id.* at 815.

Here, appellant does not direct us to any similar statutory requisites in the provisions of the Texas Government Code[5] governing the assignment of former and retired appellate court justices to sit as visiting judges in district courts. Further,

---

[5] *See* TEX. GOV'T CODE ANN. §§ 74.055, 75.002(b), 75.003 (Vernon 2013).

appellant cites "no constitutional or statutory authority requiring [that] a visiting judge's judicial oath[s] . . . be included within the record of each and every trial over which the judge presides." *See Connaly v. State*, No. 2-08-264-CR, 2009 WL 1650028, at *1 (Tex. App.—Fort Worth June 11, 2009, no pet.) (mem. op., not designated for publication).

Nothing in the record indicates that the visiting judge did not take the constitutionally-required oaths.[6] The record, therefore, does not support appellant's complaint that the visiting judge could not lawfully sit as the presiding judge over his trial. *See Connaly*, 2009 WL 1650028, at *1; *see also Murphy*, 95 S.W.3d at 320 (presumption of regularity in proceedings absent contrary evidence).

We overrule appellant's first issue.

**Accomplice-Witness Testimony**

In his second issue, appellant argues that the trial court erred in denying his motion for an instructed verdict because the State failed to corroborate the testimony

---

[6] Moreover, as noted by the Austin Court of Appeals in *Connaly v. State*, appellant "could easily have sustained his burden by objecting to the trial judge and making sufficient record at trial or by filing a motion for new trial and making the necessary record at that time." No. 2-08-264-CR, 2009 WL 1650028, at *1 (Tex. App.—Austin June 11, 2009, no pet.) (mem. op., not designated for publication). As the record stands, however, "there is no evidence that the trial judge did not take the necessary oaths and was not properly assigned to try the case now before this court." *Id.*

of Davis, an accomplice-witness. He concedes that "[s]ome of the other evidence corroborates" that he stole the complainant's car. He asserts, however, that "[n]one of the other evidence connected [him]" with the shooting of the complainant.

In regard to accomplice-witness testimony, the Texas Code of Criminal Procedure provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

In reviewing the sufficiency of the corroborating evidence, we exclude the accomplice testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Hernandez v. State*, 454 S.W.3d 643, 647 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Unlike legal sufficiency, the accomplice-witness rule is not derived from federal or state constitutional principles. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Thus, the standard of review for sufficiency of corroborating evidence is "tendency to connect" rather than rational sufficiency. *See Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999); *Davis v. State*, No. 01-13-00947-CR, 2015 WL 5626592, at *4 (Tex. App.—Houston [1st Dist.] Sept. 24, 2015, no pet.).

15

We view the corroborating evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). If there are two views of the evidence, one tending to connect the accused to the offense and the other not, we defer to the jury's view. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id*. It is not necessary that corroborating evidence directly connect a defendant to an offense or be sufficient by itself to establish guilt. *Cathey*, 992 S.W.2d at 462. The corroborating evidence may be direct or circumstantial. *Smith*, 332 S.W.3d at 442. The evidence must simply link the accused in some way to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State*, 282 S.W .3d 504, 508 (Tex. Crim. App. 2009).

A person commits capital murder if he intentionally or knowingly causes the death of an individual in the course of committing or attempting to commit a robbery. TEX. PENAL CODE § 19.03(a)(2) (Vernon Supp. 2016). The trial court instructed the jury that it could convict appellant pursuant to the law of parties, under which, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. § 7.01(a). A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the

16

commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

Here, excluding the testimony of Davis from consideration, the other evidence shows that two men, wearing "dark colored" "hoods," chased and shot the complainant at the Little Nell Apartments. *See Malone*, 253 S.W.3d at 257. And Bumpers identified Davis as wearing a blue hoodie. Immediately after the complainant fell down, the men got into the complainant's black Acura. After stopping to shoot the complainant again, the men drove away.

Approximately one hour after the shooting, two men robbed a House of Pies restaurant, located seven miles from the Little Nell Apartments. The complainant's car was driven into the restaurant parking lot; a man dressed in a black hoodie exited the driver's side of the car; and he and a man wearing a blue hoodie entered the restaurant and committed the robbery. During the robbery, the mask on the man in blue fell, exposing his facial features on the videotapes and photographs admitted into evidence. Also, the upper portion of the face of the man in black is revealed. The jury was free to compare these images to appellant's and Davis's appearances at trial and conclude that they were the robbers at the House of Pies restaurant. *See Johnson v. State*, 354 S.W.3d 491, 494 (Tex. App.—San Antonio 2011, pet. ref'd) (surveillance photographs sufficient independent evidence tending to connect defendant to robbery); *see also Simmons v. State*, 282 S.W.3d 504, 509 (Tex. Crim.

17

App. 2009) (issue "is not how an appellate court would independently assess the non-accomplice evidence but whether a rational [jury] could conclude that the non-accomplice evidence 'tends to connect' [the] appellant to the offense").

Further, Green identified appellant in court as one of the robbers at the House of Pies restaurant. The testimony of a single eyewitness can be sufficient to support a conviction. *See Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

Law enforcement officers found next to the complainant eight shell casings that had been fired from the same 9-millimeter firearm. Hines, the medical examiner, testified that the complainant, who suffered eleven wounds from "8 bullets," died from them. And Green testified that the man in the black hoodie used "either a 9-millimeter or 10-millimeter" semi-automatic firearm. Proof that connects an accused to a weapon used in an offense is proper corroborative evidence, including evidence that a defendant had a gun which was merely similar to the murder weapon. *Cockrum v. State*, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988). A white glove was also found near the complainant, and the photographs taken at the robbery at the House of Pies restaurant show the man in black wearing a single white glove.

Bumpers identified the complainant's black Acura recovered from the House of Pies restaurant as the car that she saw at the Little Nell Apartments at the time of

the shooting. And, located on the driver's side of the center console of the Acura, was a wallet, containing a bank card and a State of Texas identification card belonging to appellant and stating that he lived at the Little Nell Apartments. *See Smith*, 332 S.W.3d at 443 ("[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." (internal quotations omitted)). Further, officers found Davis's 1995 Mercury Grand Marquis parked at the Little Nell Apartments, near Building 11.

Eliminating the accomplice testimony from consideration, we conclude that the combined weight of the non-accomplice evidence, viewed in the light most favorable to the jury's verdict, sufficiently tends to connect appellant to the offense of capital murder, i.e., the murder of the complainant in the course of robbing him of his car. *See Simmons*, 282 S.W .3d at 508; *Malone*, 253 S.W.3d at 257.

Accordingly, we overrule appellant's second issue.

## Lesser-Included Offense

In his third issue, appellant argues that the trial court erred in denying his request for a jury instruction on the lesser-included offenses of murder and robbery because they are lesser-included offenses of capital murder, evidence existed that

would have permitted the jury to rationally find that he committed either murder or robbery, but not both, and, thus, he did not commit capital murder.

We review a trial court's decision not to submit a lesser-included offense instruction for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005); *Threadgill v. State*, 146 S.W.3d 654, 665–66 (Tex. Crim. App. 2004). And courts use a two-step analysis to determine whether a defendant is entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993).

First, we determine whether the requested offense is a lesser-included offense by comparing the elements of the two offenses. *Hall*, 225 S.W.3d at 535–36; *Young v. State*, 428 S.W.3d 172, 175–76 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Second, we determine whether some evidence exists in the record that would permit a rational jury to find that the defendant is guilty only of the lesser offense, if he is guilty at all. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73; *Young*, 428 S.W.3d at 176. There must be some evidence from which a rational jury could acquit the defendant of the greater offense, while convicting him of the lesser-included offense. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). We review all evidence presented at trial to make this determination. *Rousseau*, 855 S.W.2d at 673. And we may not

consider whether the evidence is credible, controverted, or in conflict with other evidence. *Moore*, 969 S.W.2d at 8. Anything more than a scintilla of evidence entitles a defendant to an instruction on the lesser-included offense. *Hall*, 225 S.W.3d at 536.

Because the State concedes that murder and robbery are lesser-included offenses of capital murder, we need only determine whether the evidence would allow a rational jury to find that appellant was guilty only of the lesser offense of either murder or robbery. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006); *compare* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2016), *with* §§ 19.02, 29.02 (Vernon 2011).

Appellant argues that the jury could have believed that he committed the offense of robbery, but not murder, because Bumpers saw a man, whom she "tentatively identified as Davis," running from the complainant's body to the black Acura, which was being driven by another person. He asserts that "[t]hese facts could lead a jury to believe that [Davis] shot the complainant and then ran from his body." And "although [appellant] may have robbed [the complainant] of his black Acura, [he] did not murder him."

Appellant further argues that there is some evidence that he committed the offense of murder, but not robbery because Monroe testified that he saw three men chasing the complainant and at least one of the three men then shot him. Monroe

21

noted that he saw a black Acura pull up to the complainant, a man exit the car, and shoot the complainant again. He asserts that although this testimony "constitutes at least some evidence that [he] may have been one of the three men who chased and shot" the complainant, it "also constitutes some evidence that [he] may not have been involved in robbing [the complainant] of his car."

Here, the trial court, in its charge instructed the jury on the law of parties, authorizing a conviction if the jury found that appellant was a party to the offense. "When a legal theory of liability—such as law of the parties—is contained in the abstract portion of the jury charge and supported by sufficient evidence, that theory should be taken into account for the purpose of determining whether submission of a lesser-included offense instruction was appropriate." *See Yzaguirre v. State*, 394 S.W.3d 526, 531 (Tex. Crim. App. 2013); *Young*, 428 S.W.3d at 177.

Appellant does not argue on appeal that the State failed to present sufficient evidence to support his conviction under the law of parties. *See Young*, 428 S.W.3d at 177. As discussed in detail above, the evidence shows that the complainant was murdered while being robbed of his car. Even if the jury believed that it was Davis, and not appellant, who had shot and killed the complainant, the evidence, as appellant notes, shows that appellant assisted in chasing the complainant until he was gunned down. He then either drove or entered, i.e., stole, the complainant's car.

We conclude that there is no evidence that appellant is guilty, if at all, only of the offense of murder or of robbery. *See Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672–73; *Vargas v. State*, No. 01-03-00870-CR, 2005 WL 729460, at *10 (Tex. App.—Houston [1st Dist.] Mar. 31, 2005, pet. ref'd) (mem. op., not designated for publication) (affirming denial of lesser-included-offense instruction for murder and robbery in capital murder case because "no rational trier of fact could conclude that [the defendant] was guilty of murder, robbery, or aggravated robbery without finding him guilty of capital murder").

Accordingly, we hold that the trial court did not err in denying appellant's request for a jury instruction on the lesser-included offenses of murder and robbery.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish. TEX. R. APP. P. 47.2(b).