PD-0238-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/7/2015 1:16:25 PM
Accepted 7/7/2015 3:53:05 PM
ABEL ACOSTA
CLERK

**IN THE TEXAS COURT OF CRIMINAL APPEALS**

**PD-0238-15**

**FROM THE FIRST DISTRICT OF TEXAS COURT OF APPEALS**
**NO: 01-13-00825-CR**

---

**WILLIAM HERNANDEZ, Petitioner**

**v.**

**STATE OF TEXAS, Respondent.**

---

**Appealed from the 351st District Court, Harris County, Texas**
**Trial Court Case Number 1295162**

The Spriggs Law Firm
1011 S. Jackson Street
Amarillo, Texas 79101
Tel. 806 376 7260
Fax (806) 372-3298
Email: spriggslawronald@gmail.com

FILED IN
COURT OF CRIMINAL APPEALS

July 7, 2015

ABEL ACOSTA, CLERK

/S/Ronald T. Spriggs
Ronald T. Spriggs
TSBN 00792853
Attorney for Petitioner
William Hernandez

1

Table of Contents

Cover Sheet…………………………………..,…………………………………1

Table of Contents…………………………..……………………………………...2

Identity of Counsel…………………………………………………………...3

Index of Authority………………………..………………………………….4

Statement of Oral Argument…………………………………………………….5

Statement of Case…………………………………………………………....5

Procedural History…………………..…………………………………………5

Grounds for Review…………………………………………………………5

Argument……………………………………………………………………..9

Conclusion……………………………………………………………………12

Certificate of Service…………………………………………………………..13

Certificate of Compliance…………………………………………………...13

Identity of Counsel

Honorable Mark Kent Ellis
Judge Presiding
Harris County Criminal Justice Center
1201 Franklin, 14th Floor
Houston, Texas 77002
Phone: (713) 755-5620

Mr. William W. Rucker
Sbot No. 24046765
Ms. Angela Johnson Weltin
Sbot No. 24027033
Assistant District Attorneys
1201 Franklin
Houston, Texas 77002
Phone: 713.755.5800
Attorneys for the State of Texas

Mr. R.P. 'Skip' Cornelius
Sbot No. 04831500
2028 Buffalo Terrace
Houston, Texas 77019-2408
Phone: 713.237.8547
Trial Attorney for the Defendant

Kurt B. Wentz
Sbot No.21179300
5629 Fm 1960 W Ste 115
Houston, Tx 77069
Phone : 281.587.0088
Appellate Attorney for the Defendant

# Index of Authority

*Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004)..................................9

*Hernandez v. State*, 454 S.W.3d 643, 645-47 (Tex. App. 2014)...........................4

*Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999).......................................9

*Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009)..................................9

## Oral Argument

Petitioner requests oral arguments, only if the Court desires it.

## Statement of Case

Petitioner -- convicted of aggravated robbery and sentenced to life imprisonment -- seeks review of the appellate court decision upholding the conviction against him.

## Procedural History

Trial was held on Sept. 13, 2013. A life sentence was imposed on Sept. 16, 2013.[1]

Appeal was taken: opinion delivered on December 2nd 2014.

## Grounds for Review:

Whether the appellate court correctly held that inadmissible inculpatory testimony can be cured with a jury instruction, when the identity of the defendant is the critical issue at trial.

## Facts

For the purpose of this petition, petitioner relies on facts recited in the appeal. Mrs. Arnold, was home with her husband and her granddaughter, Jennifer. Mrs. Arnold heard her husband screaming and a crashing sound. She and Jennifer

---

[1] *Hernandez v. State*, 454 S.W.3d 643, 645-47 (Tex. App. 2014).

ran toward the front door, where they saw that two men had kicked in her front door and were holding guns. One man, who wore a mask, grabbed Jennifer and the other, who was not wearing a mask, put a gun to Barbara's head. He demanded that she tell him where they kept their money and take him to the safe, and he threatened to kill her if she did not. A third man entered the house through the back door after having chased Mr. Arnold into the backyard. The third man wore a badge around his neck and black t-shirt with the word "police" on the front.

Mrs. Arnold testified, at trial, that she got a good look at the man who held a gun. She identified petitioner in court as her assailant; further, she testified to hearing the three men speaking to each other, mostly in Spanish.

Later that same day, while she was driving to the grocery store with her son, Mrs. Arnold saw petitioner driving a tan Hummer. She obtained a partial license plate number on the vehicle and reported it to the police.Based on the license plate number she had obtained, police officers were eventually able to locate the tan Hummer, and they detained the people who were riding in it.

The officer who stopped the Hummer believed petitioner had been riding in the vehicle, but he was unable to detain him. However, he observed petitioner walk into a nearby apartment.

Police testified that Mrs. Arnold incorrectly identified a man in that photo array as having been involved in the robbery.

Police were able to question petitioner at the apartment and eventually detained him as well. petitioner was put into a live line-up. Mrs. Arnold identified petitioner as the man who had held a gun to her head during the robbery and as the man she had seen driving the Hummer after the robbery.

One of the other two men who were found and detained when police stopped the Hummer was Eddie Castaneda, who owned the Hummer. Castaneda testified at trial as an accomplice witness. He admitted that he had gone to the Arnolds' house with petitioner and two other men. Castaneda testified that he got scared during the robbery and ran off and that the other men picked him up later. He observed that one of the other men with him was wearing police gear. Castaneda testified that he had owned the Hummer for about a month at the time of his arrest and that he was not the one driving it on the afternoon of the robbery.

Denise Guzman, the mother of petitioner's child, also testified at trial. She testified that petitioner admitted to having committed a robbery around the same time the Arnold robbery occurred in order to get money to post bond for her.

On appeal, in his second point of error, petitioner argued that the trial court abused its discretion in denying his motion for mistrial when Spanish-speaking

members of the jury heard the accomplice witness volunteer information regarding an extraneous offense.

Castaneda testified through an interpreter at trial. During his cross-examination, the following exchange occurred between Castaneda and petitioner's attorney:

> [attorney]: And you said you weren't wearing any police gear when this robbery occurred?
> [witness]: On this robbery, I had no police gear, sir.
> [attorney]: Okay. Okay. And how many robberies do you have pending right now?

Petitioner's attorney then interrupted Castaneda and asked to approach the bench. He stated, "I caught most of that [answer] and I don't want the answer interpreted." Outside the presence of the jury, the trial court had the answer interpreted. Castaneda's response was, "I have two aggravated robberies. I committed two with [petitioner], but I'm fighting the cases."
petitioner's counsel objected to this answer as non-responsive, and the trial court sustained his objection. Petitioner's attorney also sought an instruction to disregard the statement, even though it was never interpreted for the jury, because he was aware that at least one juror *spoke* Spanish.[2]

---

[2] Emphasis added.

The trial court asked the bailiff to determine which jurors, who were waiting outside the courtroom, spoke Spanish. There were two jurors who spoke Spanish, and the trial court questioned them, individually, about what they had heard. The first testified that he spoke Spanish fluently and that he understood Castaneda's answer "for the most part." The juror also told the trial court that he had not spoken to anyone else on the jury about Castaneda's last answer. The trial court specifically instructed him to disregard that answer, that it could not be considered evidence in the trial for the present offense, and that he was not to share the answer with anyone else on the jury. The juror indicated that he understood the instruction and agreed that he would comply. The trial court repeated the same process with the second juror, who likewise stated that she had not told any of the other jurors what Castaneda's last answer was, that she understood the trial court's instruction, and that she would comply. At that point, petitioner moved for a mistrial, which the trial court denied.[3]

## Argument & Authority

Mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.[4]

---

[3] See *Hernandez v. State*, 454 S.W.3d 643, (Tex. App. 2014).
[4] *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999).

Whether a witness's improper reference to an extraneous offense mandates a mistrial is determined by examining the particular facts of the case.[5] "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors."[6]

In determining whether a trial court abused its discretion in denying a motion for mistrial, we consider (1) the severity of the underlying misconduct, (2) any curative measures adopted, and (3) the certainty of the conviction absent the misconduct. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses."[7]

Here:

[the court]: My instruction to you is that you disregard the last answer by the witness and not tell anyone else on the jury what the answer was. Do you understand my instruction?[8]
[the interpreter]: His response was: I have two aggravated robberies. I committed two with William, but I'm fighting the cases.[9]

The problem is that the instruction addressed only the jurors who *spoke* spanish and not jurors who *understood* spanish. An instruction to the entire panel

---

[5] *See id.*
[6] *Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009) (quoting *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004)).
[7] *Hernandez v. State*, 454 S.W.3d 643, 649-50 (Tex. App. 2014).
[8] V.4;P.58, L20-23.
[9] V.4;P.55;L.22-23.

was not impracticable. Or, the trial judge should have told the bailiff to see if any of the jurors understood the answer given by Castaneda, because (it is common knowledge) many people in Texas understand Spanish but cannot speak it. The judge should have told all the jurors that Castaneda's answer cannot be considered for any reason during deliberations.

The error is extremely prejudicial because some jurors were not under the instruction. The State should bear the bulk of the responsibility, because he was a State witness. They called him to the stand for testimony. The State was put on notice when Defendant filed a Motion In Limine regarding Extraneous Offenses. The Motion is page 40 of the Clerk's Record. And it is this attorney's understanding from the front of the motion that it was granted. The State knew or should have known that the witness had pending cases with the defendant. The State should have cautioned their witness. Moreover, the testimony cannot be reasonably expected to be withdrawn from the juror's minds because of the alleged relationship of the petitioner and Castaneda as participants in the offense.

The record demonstrates that the court understood the inflammatory and unduly prejudicial meaning of Castaneda's statement took exception to the statement of Castaneda.

[the court]: -- you cannot talk about anything regarding another case with William. Do you understand that?[10]

[the court]: So, if you're asked a question, any question you're not to refer to any other offense or any other crime with which you may have participated in with Mr. Hernandez. Do you understand that? [11]

## Conclusion

Where inadmissible, unduly prejudicial, testimony is evoked before the entire jury panel, instructions to disregard should, likewise, be given to the entire panel. Here, inadmissible testimony was evoked in spanish and instructions to disregard were given only to Spanish speakers without regard as to whether non-Spanish speakers understood the testimony.

## Prayer

Wherefore premises considered, petitioner asks that the opinion of the appellate court be reversed and for such other relief has he maybe entitled to in law or equity.

The Spriggs Law Firm
1011 S. Jackson Street
Amarillo, Texas 79101
Tel. 806 376 7260
Fax (806) 372-3298
Email: spriggslawronald@gmail.com

/S/Ronald T. Spriggs
Ronald T. Spriggs
TSBN 00792853

[10] V.4;P.56;L.10-12.
[11] V.4;P.56;L.14-17.

Attorney for Petitioner
William Hernandez

## Certificate of Compliance

I hereby certify that I used the aid of a computer and software to generate this document. I used 14-point typeface for all text, except for footnotes which are in 12-point typeface. Further, I certify that this Petition and the brief contain 467 (four-hundred and sixty seven). In making this certificate of compliance, I am relying on the word counter used by the same the same software used to prepare the document. The word count excludes words used in following: the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, statement of facts, signature, proof of service, certification, certificate of compliance, and appendix.

/S/ Ronald T. Spriggs

## Certificate of Service

I certify that on July 6, 2015 a true and correct copy of this document was served on the parties listed below in the manner indicated.

/S/ Ronald T. Spriggs

Angela Weltin
District Attorney
713.755.0242 (fax)

Opinion issued December 2, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00825-CR

———————————

**WILLIAM HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1295162

# OPINION

A jury convicted appellant, William Hernandez, of aggravated robbery and, after finding an enhancement paragraph true, assessed his punishment at confinement for life. In two points of error, appellant argues that (1) the evidence to support his conviction was insufficient because the accomplice witness

testimony was not adequately corroborated and (2) the trial court abused its discretion in denying his motion for mistrial when Spanish-speaking members of the jury heard the accomplice witness volunteer information regarding an extraneous offense.

We affirm.

## Background

The complainant, Barbara Arnold, was home with her husband, Pete Arnold, and her granddaughter, Jennifer, when she heard Pete screaming and a sound like a car crashing into her house. She and Jennifer ran toward the front door, where they saw that two men had kicked in her front door and were holding guns. One man, who wore a mask, grabbed Jennifer and the other, who was not wearing a mask, put a gun to Barbara's head. He demanded that she tell him where they kept their money and take him to the safe, and he threatened to kill her if she did not. A third man entered the house through the back door after having chased Pete into the backyard. The third man wore a badge around his neck and black t-shirt with the word "police" on the front.

Barbara testified at trial that she got a good look at the man who held a gun to her head and threatened her while she was on the floor trying to remember how to open the safe. She identified appellant in court as her assailant. Barbara further testified that she heard the three men speaking to each other, mostly in Spanish,

2

and that she heard two of the men call appellant "Boss." The men began arguing among themselves after Jennifer somehow managed to escape the house. Barbara told the men that her husband Pete, who had also escaped over the back fence to a neighbor's house, had a cell phone and would call the police. The men left before she could get the safe open, but they took a variety of items from her home.

Later that same day, while she was driving to the grocery store with her son Van, Barbara saw appellant driving a tan Hummer. Van heard his mother say, "Look at him. That's him," and he got a good look at appellant. Barbara obtained a partial license plate number on the vehicle and reported it to the police.

Deputy Marshall K. Seitzinger, who was a police officer with the Houston Police Department at the time the Arnolds were robbed, testified that he investigated the robbery. He testified that Jennifer reported that the suspects had left in a burgundy red Cadillac. The Arnolds described the suspects as three armed men wearing police gear and indicated that the men were generally around six feet tall and were between twenty-eight and thirty years old. After Barbara obtained the partial license plate number for the vehicle she had seen appellant driving after the robbery, Deputy Seitzinger put together a black and white photo array containing the owner of the vehicle. He testified that Barbara incorrectly identified a man in that photo array as having been involved in the robbery.

However, based on the license plate number she had obtained, police officers were eventually able to locate the tan Hummer, and they detained the people who were riding in it. Police recovered a semiautomatic pistol and ammunition, and clothing items, including a hat and cap that had the word "police" on them, a badge, and a mask. The officer who stopped the Hummer believed appellant had been riding in the vehicle, but he was unable to detain him. However, he observed appellant walk into a nearby apartment. Deputy Seitzinger was able to question appellant at the apartment and eventually detained him as well. Appellant was put into a live line-up. Deputy Seitzinger admonished Barbara and Van both that they were not to make any statements during the live line-up and that they would be questioned separately after viewing the suspects in the line-up. He testified that Barbara appeared very shaken after viewing the line-up. She identified appellant as the man who had held a gun to her head during the robbery and as the man she had seen driving the Hummer after the robbery. In a separate interview, Van also identified appellant as the man he had seen driving the Hummer.

One of the other two men who were found and detained when police stopped the Hummer was Eddie Castaneda, who owned the Hummer. Castaneda testified at trial as an accomplice witness. He admitted that he had gone to the Arnolds' house with appellant and two other men, one of whom was named Pedro Marquez,

4

in Marquez's Cadillac. Castaneda testified that he got scared during the robbery and ran off and that the other men picked him up later. He observed that one of the other men with him was wearing police gear. Castaneda testified that he had owned the Hummer for about a month at the time of his arrest and that he was not the one driving it on the afternoon of the robbery.

Denise Guzman, the mother of appellant's child, also testified at trial. She recognized both Castaneda and Marquez as friends of appellant. She testified that appellant was the leader of the group and that the other men referred to appellant as "boss." Guzman knew that Marquez drove a burgundy red Cadillac and Castaneda drove a Hummer. She also testified that appellant admitted to having committed a robbery around the same time the Arnold robbery occurred in order to get money to post bond for her.

The jury found appellant guilty and assessed his punishment at confinement for life.

## Accomplice Witness Testimony

In his first point of error, appellant argues that the evidence to support his conviction was insufficient because the accomplice witness testimony was not adequately corroborated.

## A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we consider all of the record evidence in the light most favorable to the verdict, and we determine whether any rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the fact-finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The Texas Code of Criminal Procedure prohibits a conviction based on an accomplice witness's testimony unless other non-accomplice evidence that tends to connect the accused to the offense corroborates it. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). In reviewing the sufficiency of the corroborating evidence, we exclude the accomplice testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We view the corroborating evidence in the light most

favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). If there are two views of the evidence, one tending to connect the accused to the offense and the other not, we defer to the jury's view. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id.*

It is not necessary that corroborating evidence directly connect a defendant to an offense or be sufficient by itself to establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The evidence must simply link the accused in some way to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). The corroborating evidence may be direct or circumstantial. *See Smith*, 332 S.W.3d at 442.

## B.  Analysis

Here, appellant argues that the evidence is insufficient to support his conviction because there was insufficient non-accomplice evidence to corroborate Castaneda's accomplice witness testimony.

Eliminating the accomplice testimony from consideration, the remaining evidence is sufficient to tend to connect appellant to the aggravated robbery. *See Malone*, 253 S.W.3d at 257. Barbara Arnold identified appellant, both in a live

7

line-up and at trial, as the man who put a gun to her head and robbed her. The testimony of a single eyewitness can be sufficient to support a conviction. *See Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Appellant argues that Barbara's testimony lacked credibility because she had previously made an incorrect identification using a photo array. However, the jury alone decides whether to believe eyewitness testimony and resolves any conflicts or inconsistencies in the evidence. *See id.* (citing *Mosely v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998)).

Furthermore, Arnold's granddaughter, Jennifer, reported that she saw the robbers leave in a burgundy red Cadillac. Guzman testified that appellant had committed a robbery to get the money for her bail, and she linked Castaneda and Marquez, whom she knew to drive a red Cadillac, to the robbery. When police located and stopped the Hummer that Barbara had seen appellant driving following the robbery, they found weapons, ammunition, articles of clothing with the word "police" on them, a badge, and a mask. These items matched the descriptions the Arnolds had given of their assailants as being three armed men, one of whom wore police gear and two of whom wore masks.

All of this evidence links appellant in some way to the commission of the robbery. *See Simmons*, 282 S.W.3d at 508. Thus, the jury could reasonably have concluded that the evidence sufficiently tended to connect appellant to the

8

commission of the offense. *See id.*; *Malone*, 253 S.W.3d at 257. Appellant does not assert any other basis for concluding that the evidence was insufficient to support his conviction. We conclude that the evidence was sufficient to allow the jury to find all of the elements of aggravated robbery beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Adames*, 353 S.W.3d at 859; *see also* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011) (providing that person commits offense of aggravated robbery if "in the course of committing theft . . . and with intent to obtain or maintain control of the property" he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and he uses or exhibits deadly weapon).

We overrule appellant's first point of error.

## Motion for Mistrial

In his second point of error, appellant argues that the trial court abused its discretion in denying his motion for mistrial when Spanish-speaking members of the jury heard the accomplice witness volunteer information regarding an extraneous offense.

### A. Relevant Facts

Castaneda testified through an interpreter at trial. During his cross-examination, the following exchange occurred between Castaneda and appellant's attorney:

9

[attorney]: And you said you weren't wearing any police gear when this robbery occurred?

[witness]: On this robbery, I had no police gear, sir.

[attorney]: Okay. Okay. And how many robberies do you have pending right now?

Appellant's attorney then interrupted Castaneda and asked to approach the bench. He stated, "I caught most of that [answer] and I don't want the answer interpreted." Outside the presence of the jury, the trial court had the answer interpreted. Castaneda's response was, "I have two aggravated robberies. I committed two with [appellant], but I'm fighting the cases."

Appellant's counsel objected to this answer as non-responsive, and the trial court sustained his objection. Appellant's attorney also sought an instruction to disregard the statement, even though it was never interpreted for the jury, because he was aware that at least one juror spoke Spanish.

The trial court asked the bailiff to determine which jurors, who were waiting outside the courtroom, spoke Spanish. There were two jurors who spoke Spanish, and the trial court questioned them, individually, about what they had heard. The first testified that he spoke Spanish fluently and that he understood Castaneda's answer "for the most part." The juror also told the trial court that he had not spoken to anyone else on the jury about Castaneda's last answer. The trial court specifically instructed him to disregard that answer, that it could not be considered

evidence in the trial for the present offense, and that he was not to share the answer with anyone else on the jury. The juror indicated that he understood the instruction and agreed that he would comply. The trial court repeated the same process with the second juror, who likewise stated that she had not told any of the other jurors what Castaneda's last answer was, that she understood the trial court's instruction, and that she would comply. At that point, appellant moved for a mistrial, which the trial court denied.

## B.    Standard of Review

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether a witness's improper reference to an extraneous offense mandates a mistrial is determined by examining the particular facts of the case. *See id.* "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

We review a trial court's denial of a mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In determining whether a trial court abused its discretion in denying a motion for

11

mistrial, we consider (1) the severity of the underlying misconduct, (2) any curative measures adopted, and (3) the certainty of the conviction absent the misconduct. *Id.* at 700. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

## C. Analysis

Appellant argues that Castaneda's revelation of other pending aggravated robberies, committed with appellant and in a similar manner, was especially harmful to him. He also argues that even though only two Spanish-speaking jurors were identified, others on the jury could also have understood Castaneda's comments.

However, nothing in the record suggests that Castaneda's testimony was "so highly prejudicial and incurable" that the trial court erred by denying the motion for mistrial. *See Ocon*, 284 S.W.3d at 884. The complained-of statement was made in Spanish and was never translated for the entire jury to hear. The trial court identified the two jurors who were able to understand what Castaneda had said and instructed them not to share the information with the other jurors and not

12

to consider the evidence.[1] Jurors are presumed to follow instructions, and appellant does not point to any evidence suggesting that the jurors in this case failed to follow the trial court's instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (holding that "[i]nstructions to the jury are generally considered sufficient to cure improprieties that occur during trial" and that courts "generally presume that a jury will follow the judge's instructions"); *see also Ladd*, 3 S.W.3d at 567 (holding that trial court could have reasonably concluded that instruction to disregard was sufficient to cure any harm).

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Publish. TEX. R. APP. P. 47.2(b).

---

[1] To the extent that appellant is arguing on appeal that the trial court's procedure of questioning the Spanish-speaking jurors separately rather than giving an instruction to disregard to the entire jury was improper, we observe that he did not object on this basis in the trial court. Thus, the objection is not preserved for review on appeal. *See* TEX. R. APP. P. 33.1(a).

13