**Opinion issued February 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00112-CR

————————————

**WILLIAM DENON SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Case No. 1706143**

## MEMORANDUM OPINION

A jury found Appellant William Denon Smith guilty of evading arrest or detention in a motor vehicle and the trial court assessed his punishment at forty years' confinement in the Texas Department of Criminal Justice. In a single issue, Appellant argues the trial court erred in denying his motion for mistrial after a

witness for the State referred to a "robbery," an extraneous offense involving Appellant that was not directly related to the charged offense at issue.

We affirm.

## Background

This case stems from a high-speed motor vehicle chase on January 11, 2021. Appellant William Denon Smith ("Appellant") entered a Chase Bank ("Chase") in Spring, Texas. He had been there at least twice before, once on January 5, 2021, and again on January 8, 2021, according to Chase employee Amelia Thompson ("Thompson"). During the guilt-innocence phase of trial, Thompson testified that on January 5, 2021, there was "an incident" at Chase involving a man who approached her and got very close to her on the other side of the counter. He was wearing a hat, sunglasses, and a mask. Thompson spent less than two minutes with him and was "scared" after the incident. Three days later, on January 8, 2021, the same man, dressed in the same clothes, approached Thompson and got close to her, "right across from the counter." This second "incident" lasted about three minutes and left Thompson "terrified."[1]

Thompson further testified that on January 11, 2021, she saw a man she believed to be the same man involved in the two previous incidents approaching

---

[1] During the punishment phase of trial, Thompson testified in greater detail about the two "incidents," each involving a robbery. But because Appellant was not on trial for the robberies during these proceedings, the trial court ruled that the jury was not allowed to hear about the robberies during the guilt-innocence phase.

the bank.  She alerted the bank's security officer and when he approached the man, the man fled.  The officer told Thompson the man left in an orange truck.  During trial, Thompson identified Appellant as the man who twice approached her in the bank and who fled from the bank on January 11, 2021.

Appellant was apprehended on January 11, 2021 after a high-speed chase that lasted twenty to thirty minutes.  He was charged with evading arrest or detention in a motor vehicle.[2]  During the guilt-innocence phase of trial, several law enforcement personnel testified for the State regarding the high-speed chase and Appellant's apprehension.

## A. Trial Testimony

### 1. Mark Holmes

Harris County Sherriff's Deputy Mark Holmes ("Deputy Holmes") testified he was working as a uniformed officer on January 11, 2021 in a Chase Bank in Harris County, Texas.  He said he was talking to a bank employee on January 11, 2021 about an incident that had occurred several days earlier when the employee saw the same man approaching the building.  After the man made eye contact with Deputy Holmes, the man left.  Deputy Holmes followed the man, who was wearing a mask.  The man ran to an orange pickup truck with paper license plates, and

---

[2]    Appellant also was charged with felon in possession of a firearm but the jury acquitted him of that charge.

ignored orders from Deputy Holmes, who identified himself as a police officer, to stop. The man got into the driver's side of the truck and left.[3]

### 2. Steven Drake

Deputy Steven Drake ("Deputy Drake") works in the Harris County Constable's Office, Precinct 4. On January 11, 2021, Deputy Drake was patrolling in Spring, Texas, when he heard a description of an orange truck with paper license plates on his radio. He saw an orange truck with paper license plates in the area and followed the truck, which was speeding. He intended to stop the truck for speeding, so he activated his lights and turned on his siren, but the truck continued driving. Other law enforcement joined the pursuit, all of them running their lights and sirens. Deputy Drake testified the driver of the orange truck used his turn signal to change lanes and for freeway exits but never made any attempt to stop. He testified the driver appeared to be "going somewhere." Deputy Drake was involved in the pursuit for about twenty minutes, after which he was forced to exit, and other law enforcement continued the pursuit. He estimated that at one point they were traveling at ninety miles per hour and testified the truck was "swerving through traffic" to avoid the law enforcement personnel chasing him. He estimated he was involved in the chase for twenty or thirty miles. After the pursuit ended, Deputy Drake saw Appellant in custody, standing near the orange truck. After he

---

[3]     Deputy Holmes estimated the truck was parked 500 yards from the bank.

was apprehended, Appellant did not struggle or attempt to get away but was, rather, calm and polite.

### 3. Demon Callier

Deputy Demon Callier ("Deputy Callier") of the Harris County Constable's Office, Precinct 4, testified he took a call on January 11, 2021 about an orange Dodge pickup with a paper license plate and radioed it to other deputies in the area. He testified that approximately two minutes later, Deputy Drake spotted the truck and tried to initiate a traffic stop for speeding, but the truck did not stop. Deputy Callier joined the chase, activating his emergency lights and sirens, and stayed with the pursuit until the end. The chase ended when the orange truck parked in the driveway of a residence. The chase lasted twenty to twenty-five minutes, involved ten or more officers, and included some "erratic driving" by Appellant. When they approached the orange truck parked on the driveway, Appellant was sitting in the driver's seat. A woman was sitting in the passenger's seat.[4] In searching the car, the officers found a semiautomatic Glock handgun in the passenger's purse. Appellant first said he did not own the gun but subsequently admitted it was his.[5]

---

[4] The female passenger was detained but released without arrest.

[5] Deputy Callier initially testified he heard Appellant say the gun was his but later testified he may have heard from someone else that Appellant acknowledged owning the gun.

Deputy Callier wore a body-worn camera when he was in pursuit of Appellant and his patrol car was equipped with a dash camera. The jury saw the dash camera video. It depicted Deputy Callier's lights and sirens activated as he drove to catch up with the other deputies pursuing Appellant. By the time he caught up to them, Deputy Drake's vehicle was to the right of the orange truck and other vehicles were involved in the pursuit. By that time, Deputy Callier testified, Appellant "should have pulled over to the rightmost lane and stopped." Deputy Callier stated Appellant was traveling at an "excess speed." As the pursuit continued, law enforcement from other jurisdictions joined the pursuit. Deputy Callier testified that at one point, he was driving in excess of ninety miles per hour to keep up with the orange truck. When Deputy Callier exited the freeway and drove into a residential area, the orange truck was traveling at thirty-five to forty miles per hour. Deputy Callier's dashcam video indicated the chase lasted about twenty-five minutes and covered approximately twenty miles before Appellant stopped in a residential driveway. Deputy Callier arrived at the driveway seconds after Appellant stopped there. After parking, Appellant did not try to flee, did not struggle, and obeyed the instructions given by law enforcement personnel.

### 4. Ryan Hilz

Deputy Investigator Ryan Hilz, a robbery and violent crime investigator with the Harris County Sherriff's Office ("Deputy Hilz"), testified that on January 11,

2021, he recovered a handgun at the end of a vehicle pursuit involving Appellant and the Precinct 4 Constable's Office. The gun was discovered during the inventory search of Appellant's vehicle, but Deputy Hilz was not involved in the pursuit. Deputy Hilz recovered and took possession of a black Glock 21 found in the purse of the vehicle's passenger and submitted it as evidence. He did not know whether Appellant owned the weapon.

### 5. David Helms

Sergeant David Helms ("Sergeant Helms"), a Houston Police Officer, responded to the scene of an investigation on January 11, 2021 involving a suspect fleeing in a vehicle. Appellant, who was driving an orange truck, was ultimately arrested. Sergeant Helms found a black Glock semiautomatic pistol in the front when he searched the truck after the chase. After Appellant was arrested and read his *Miranda* warnings, Sergeant Helms and Detective Hilz interviewed Appellant in the FBI's Houston office.[6] During the interview, parts of which were played for the jury, Appellant told them he fled because there was a gun in the truck and he wanted to drive the truck to where he was staying. Appellant confirmed during the interview that he was the driver of the orange truck, that he knew there was a gun in the truck, that he knew the police wanted to stop him, that he is a felon, and that he passed the pistol to his passenger to put in her purse. He stated during the

---

[6]     *See Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

7

interview that he wanted to take his truck home and that he used his turn signals during the chase. Sergeant Helms testified that Appellant consented to give a DNA swab and to a search of his cell phone.

## B. The Motion in Limine, the Rule 404(b) Hearing, and Deputy Gheen's Testimony

Appellant's motion in limine included a request that the State be ordered "not to mention, refer to, or attempt to elicit in any manner" Appellant's extraneous offenses until the trial court conducted a hearing outside the presence of the jury to determine the admissibility of the offenses. The trial court granted the motion in limine before trial began.

The State filed a Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses ("404(b) Notice") pursuant to Texas Rule of Evidence 404(b).[7] The 404(b) Notice included two incidents involving robberies at Chase, corresponding to the two prior incidents on January 5 and January 8, 2021, where

---

[7] Texas Rule of Evidence 404 pertains to "Character Evidence; Crimes or Other Acts." Rule 404(b) states in part:

> **(b) Crimes, Wrongs, or Acts.**
>
> **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

TEX. R. EVID. 404(b).

8

according to Thompson, a man had approached her at the bank. The trial court conducted a Rule 404(b) hearing prior to the beginning of testimony. During the hearing, Appellant objected as follows:

> I'm going to object to the facts of those two prior robberies as not relevant, which is the first prong for contextual evidence; as violating Rule 402; and being too prejudicial under Rule 403 and the *Montgomery* case; and in violation of Rule 404 as improper background contextual evidence. So those are my objections to both of those robberies being proved up at the guilt and innocence state of this trial.

The trial court judge remarked that he was looking at "the [Texas Rule of Evidence] 403 issue:"

> It's definitely – if you're talking about all the specifics to the two bank robberies, I think it's going to be highly prejudicial. Whether it's unfair, I haven't gotten that far, but it definitely appears to be highly prejudicial. But I will allow it in a means where you can establish what you need to establish without it being unfairly prejudicial.[8]

After the parties conferred with the trial court, they came to an agreement, as articulated by the State:

> [J]ust to make sure that I comply with your rulings and don't, you know, cause any unnecessary movement of the jury for efficiency, it's Your Honor's ruling that we can talk about incidents, the facts of how

---

[8]    Texas Rule of Evidence 403 states:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

TEX. R. EVID. 403.

9

she came close to this defendant in the past, but certainly not the word "robbery" and nothing about a specific criminal act. . . .

Appellant's counsel stated, "If that's all they offer, then I'll hold my objection in abeyance." To which the trial court ruled, "All right. So I think we'll do it that way to prevent any 403 issues."

Later that day, the State called Jeremy Gheen ("Deputy Gheen"), a Harris County Constable's Office Precinct 4 corporal, who responded to a call on January 11, 2021 regarding an orange truck that was evading the police. He testified about his exchange with Appellant when the truck he was driving came to a stop:

| Q (by the State): | Were you present when the truck came to a stop? |
|---|---|
| A (by Deputy Ghent): | That's correct. |
| Q: | When the truck came to a stop, did you participate in a felony stop? |
| A: | That's correct, I did. |
| Q: | What is a felony stop? |
| A: | It is guns drawn and giving out verbal commands to the suspects to retreat back to us in as safe a manner as possible and to get them detained. |
| Q: | Why was this a felony stop? |
| A: | We were informed about the robbery at a bank and – |

| | |
|---|---|
| Counsel for Appellant: | Objection, Your Honor. This gets into what we – |
| The Court: | All right. State, approach the bench — |
| Counsel for Appellant: | Instruction to disregard. |
| The Court: | The jury will be instructed to disregard the last statement of the witness. |
| Counsel for Appellant: | Move for a mistrial, Your Honor. |
| The Court: | That will be denied. |

(At the Bench, on the record)

| | |
|---|---|
| Counsel for the State: | Yes, Your Honor? |
| The Court: | Did y'all talk to him about this? |
| Counsel for the State: | He's very tired and sleepy and we – |
| The Court: | You did not talk to him – |
| Counsel for the State: | We'll take him out, Judge, with the Court's permission. Can we take him out? |
| The Court: | Do you want to take – |
| Counsel for Appellant: | I cannot hear what you're saying. I'm sorry. |
| Counsel for the State: | Can we take him out of the room and admonish him again? |

Counsel for Appellant reurged his motion for a mistrial and the Court denied it again, stating he would instruct the jury to disregard the statement.[9]

---

[9] The jury instructions contained the following language:

11

Deputy Gheen continued his testimony, stating that he saw Appellant driving the orange truck and park it in a driveway. Deputy Gheen testified that after Appellant emerged from the truck, he did not attempt to flee on foot, did not struggle, and followed law enforcement personnel's commands.

## C.    Conviction and Punishment

The jury convicted Appellant of evading arrest or detention with a motor vehicle. Appellant elected for the trial court to assess punishment. The charge was enhanced with two prior convictions for felony assault and harassment of a public servant. Appellant pleaded true to the enhancements. The trial court assessed Appellant's punishment at forty years' confinement in the Texas Department of Criminal Justice. This appeal ensued.

## Discussion

In one issue, Appellant argues the trial court erred in denying his request for a mistrial after Deputy Gheen informed the jury that Appellant was involved in a robbery in violation of the trial court's ruling on Appellant's motion in limine. Appellant argues the State's failure to properly instruct Deputy Gheen about the court's prior ruling "resulted in the jury being presented with that highly

---

You are instructed that certain evidence may have been presented to you in regard to the defendant's having been charged and convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case.

12

prejudicial and inflammatory" information. Appellant argues the court's instruction to the jury to disregard Deputy Gheen's statement was not adequate to address the resulting harm and that a mistrial should have been granted, because the error was incurable. The State responds that the trial court did not err because the jury is presumed to have followed the court's instruction to disregard the statement. The State argues that "one slip of the word 'robbery' without reference to [A]ppellant or when it occurred" was not calculated to inflame the minds of the jury or "so damning as to suggest it would be impossible to remove any harmful impression from the mind of the jury." Thus, it argues, the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

## A.     Standard of Review and Applicable Law

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Gonzalez v. State*, 455 S.W.3d 198, 205–06 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon*, 284 S.W.3d at 884 (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial is warranted to stop trial proceedings "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* Mistrial is "an

extreme remedy" that "should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Id.* at 884–85.

We determine whether an error requires a mistrial based on the particular facts of each case. *Id.* at 884. In reviewing a ruling on a motion for mistrial, we view the evidence "in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). The reviewing court will not substitute its judgment for that of the trial court but will decide, rather, whether the trial court's ruling was "arbitrary or unreasonable." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). The trial court's ruling on a motion for mistrial must be upheld if it was "within the zone of reasonable disagreement." *Wead*, 129 S.W.3d at 129; *Ocon*, 284 S.W.3d at 884.

Instructions to disregard "are generally considered sufficient to cure improprieties that occur during trial." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Testimony that refers to or implies information regarding extraneous offenses allegedly committed by the defendant "can be rendered harmless by an instruction from the trial judge." *Davis v. State*, 642 S.W.2d 510, 512 (Tex. Crim. App. 1982). It is "well-settled" that testimony that refers to or implies the commission of extraneous offenses is rendered harmless if the trial judge instructs the jury to disregard the testimony, "unless it appears the evidence

14

was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (citing *Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex. Cr. App. 1987)).

When constitutional rights are not implicated, we evaluate whether a trial court abused its discretion in denying a motion for mistrial by weighing the factors enumerated in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). We consider "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Id.*; *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). In conducting this review, we examine the factors in light of the entire record. *Schutz v. State*, 63 S.W.3d 442, 444-45 (Tex. Crim. App. 2001).

## B.    The Parties' Contentions

Appellant argues that the State's failure to instruct Deputy Gheen to refrain from referring to robberies involving Appellant was "highly prejudicial and inflammatory." Appellant concedes "there was sufficient evidence to support guilt," but asserts the evidence "was not overwhelming." While he does not dispute he was the driver of the orange truck in question, and he testified he was

15

aware he was being pursued by law enforcement personnel, Appellant explains he did not make any effort to hide from law enforcement during the chase, he used his turn signals during the chase, and he "fully cooperated with law enforcement" when he stopped in a place "he determined was safe."

Appellant argues that Deputy Gheen's statement regarding a robbery "garnered the jury's attention and may have resulted in Appellant being improperly tried for collateral offenses or for being a criminal generally." He explains the jury had already heard testimony from Thompson that she was "fearful" during the January 5, 2021 incident and "terrified" after the January 8, 2021 incident.[10] He argues that Thompson's testimony, coupled with Deputy Gheen's reference to a robbery involving Appellant, would have made it "very difficult" for the jury to do anything other than convict Appellant. Appellant argues that it is likely the evidence of the extraneous offenses played a "significant role" in Appellant's conviction.

Appellant argues the jury "certainly had some question about his guilt as they spent a considerable period of time on the first day of deliberation and had to return the following day to complete their task."[11] Appellant argues that one of the

---

[10] Thompson testified that she was "scared" after the first incident.

[11] Given that the jury was deliberating on two charges, it is not possible to determine how much of the jury's deliberation pertained to the evading arrest charge. *See supra*, note 2.

16

jury's notes sent to the Court asked if there was a "specific distance when you must stop when being followed by a police car with lights and siren active."[12]  Thus, Appellant asserts, "the evidence was not so overwhelming as to assure that the extraneous offense evidence had no influence or only a slight influence on the verdict."

The State contends that the court's instruction to the jury to disregard Deputy Gheen's statement cured his reference to a robbery.  The State further argues that Appellant did not present evidence showing the jury failed to follow the trial court's instruction and thus, Deputy Gheen's reference to "the robbery at the bank" was not "so calculated to inflame the minds of a jury or of such a nature as to suggest the impossibility of withdrawing the impression produced."

## C.    The Mosley Factors

Evaluating whether a trial court erred in denying a mistrial is similar to performing a harm analysis.  *Archie*, 221 S.W.3d at 700; *Gomez v. State*, 552 S.W.3d 422, 428 (Tex. App.—Fort Worth 2018, no pet.).  "[W]hether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis."  *Hawkins*, 135 S.W.3d at 77.  We use a harm analysis

---

[12]    The jury's actual question was, "Is there any language that specifies a distance of when you must stop when you are being followed by a police car with lights and siren active?"

when there is error, and "ordinarily, error occurs only when the trial court makes a mistake." *Id.* at 76.

Here, the trial court sustained Appellant's objection to Deputy Gheen's testimony, instructed the jury to disregard his reference to a robbery, and included a jury instruction in the charge admonishing the jury that it could not consider evidence of extraneous offenses in determining guilt. As in *Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004), "[t]he only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial." *Id.* at 77–78.

Appellant contends the reviewing court should consider in its analysis "the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case." Appellant cites *Morales v. State*, 32 S.W.3d 862 (Tex. Crim. App. 2000) in support of its analysis. But *Morales* is about the exclusion of a relevant piece of evidence. *Id.* at 864. We believe the proper analysis is that set forth in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The *Mosley* factors are based on federal caselaw and are intended to construe the impact of Texas Rule of Appellate Procedure 44.2(b), which states, "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *See Mosley*, 983 S.W.2d at 259. Although *Mosley* involved an improper jury argument, the *Mosley*

18

factors have been applied in other situations where mistrials were denied, such as in cases involving testimony referring to extraneous offenses. *See, e.g., Gomez*, 552 S.W.3d at 427, 429 (affirming trial court's denial of mistrial after testifying officer referred to "previous family violence calls involving Appellant").[13] As noted, under *Mosley*, we consider: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley*, 983 S.W.2d at 259; *see also Hernandez v. State*, 454 S.W.3d 643, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Archie*, 221 S.W.3d at 700)[14]; *Griffin v. State*, 571 S.W.3d 404,

---

[13] Although *Gomez v. State*, 552 S.W.3d 422, 428 (Tex. App.—Fort Worth 2018, no pet.) does not expressly refer to the factors as *Mosley* factors, it identifies the factors and relies on *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004), which cites the *Mosley* factors in its opinion concerning an appeal of the denial of a motion for mistrial.

[14] *Hernandez v. State*, 454 S.W.3d 643, 649 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) identifies the *Mosley* factors but it does not address each factor. Rather, it bases its holding solely on the presumption that the trial court's instruction to the jury to disregard testimony about an extraneous offense was sufficient to cure any harm. *Id.* at 650. In that case, we held the trial court's denial of a motion for mistrial was not an abuse of discretion. *Id.*

417 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citing *Archie*, 340 S.W.3d at 739) (citing *Mosley*, 983 S.W.2d at 259).[15, 16]

## 1. The Severity of the Misconduct

Appellant argues the State did not instruct Deputy Gheen to refrain from referring to any prior robberies. The State counters that the record does not reflect it failed to instruct its witnesses to avoid referring to robberies; rather, the record indicates only that there was "one tired witness who accidentally said the word 'robbery.'"[17] The transcript of the trial does not establish whether the witness was told prior to his testimony not to refer to robberies, but the State did request permission to admonish the witness "again." As the State notes in its brief, "every other witness complied with the court's instruction, presumably because the State informed them of such." Thus, Appellant did not establish the State engaged in severe misconduct.

Further, Appellant did not establish that he was prejudiced by Deputy Gheen's statement. "Prejudice is clearly the touchstone of the first factor in the *Mosley* test." *Hawkins*, 135 S.W.3d at 77. "To be sure, particularly offensive

---

[15] In *Griffin v. State*, 571 S.W.3d 404, 417 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd), this Court applied the *Mosley* factors to determine whether the trial court abused its discretion in denying a motion for mistrial.

[16] The parties did not address the *Mosley* factors in their briefs.

[17] Deputy Gheen stated at the beginning of his testimony that he had not had any sleep because he was on duty "very, very late" the night before.

or outrageous conduct generally gives rise to a natural inference of prejudice and can be considered as such, even when prejudice is not otherwise apparent from the record." *Id.* at 77–78. Appellant argued that "the evidence of extraneous criminal offenses was inherently prejudicial and tended to confuse the issues in the case because of the jury's natural inclination to infer guilt of the charged offenses from the extraneous offenses." But Deputy Gheen's single reference to a robbery was not accompanied by any information about the robbery. To the extent Appellant asserts the "mention of an extraneous robbery garnered the jury's attention, and may have resulted in Appellant being improperly tried for collateral offenses for being a criminal generally," he seems to argue that any accidental reference to an extraneous offense will be prejudicial and should automatically result in mistrial. That is not the law. *See, e.g., Bendy v. State*, No. 08-15-00369-CR, 2016 WL 6473054, at *5 (Tex. App.—El Paso Nov. 2, 2016, no pet.) (mem. op., not designated for publication) (holding "the magnitude of any prejudicial effect was low" when jury heard "single, isolated statement" that Appellant's name appeared in unspecified criminal investigation); *Gomez*, 552 S.W.3d at 426 (discussing first *Mosley* factor, noting that officer who mentioned extraneous offenses after being instructed not to did not refer to them again or provide details regarding offenses, and finding that "limited nature" of his statement weighed against mistrial). As Appellant notes, by the time Deputy Gheen testified, Thompson already had

21

testified that she was "terrified" by the two prior incidents at Chase involving Appellant. The jury was free to believe or disbelieve after her testimony that something nefarious had transpired during those prior incidents. Either way, Appellant did not establish he was prejudiced by Deputy Gheen's isolated statement about a robbery devoid of any other factual context or information.

Because it appears Deputy Gheen was admonished not to refer to robberies but inadvertently disregarded the admonishment, and in the absence of a showing that Appellant was prejudiced by the statement, this factor weighs against a finding that the trial court abused its discretion in denying Appellant's motion for mistrial.

## 2. Measures Adopted to Cure the Misconduct

Immediately after Deputy Gheen's testimony regarding a robbery, Appellant objected to the testimony about the extraneous offense and asked for an instruction to disregard. The transcript indicates the trial court immediately instructed the jury "to disregard the last statement of the witness." In addition, the jury charge instructed the jurors to disregard any evidence "in regard to the defendant's having been charged and convicted of an offense or offenses other than the one" for which he was on trial.

Instructions to disregard "are generally considered sufficient to cure improprieties that occur during trial." *Gamboa*, 296 S.W.3d at 580; *see also Davis*, 642 S.W.2d at 512 (testimony "referring to or implying extraneous offenses

22

allegedly committed by the defendant" is rendered harmless if judge gives instruction to disregard); *Sanders v. State*, 25 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) ("Because curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted."); *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) ("[T]he trial judge's prompt sustaining of counsel's objection conveyed the appropriate message that the witness's comment was not supported by the evidence and was not to be considered."). The general presumption is that a jury will follow the judge's instructions. *Gamboa*, 296 S.W.3d at 580 (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)).[18] The presumption is rebuttable if the complaining party "point[s] to evidence that the jury failed to follow the trial

---

[18]     *See Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex. Cr. App. 1987) (holding witness statement that "[appellant] told me that even when he was in the penitentiary, that he had stomach problems" was cured by trial court's instruction to disregard); *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (holding reference to appellant's having "recently been released from the penitentiary" did not warrant mistrial when jury was instructed to disregard testimony); *Ballard v. State*, 537 S.W.3d 517, 521, 525–26 (Tex. App.—Houston [1st Dist. 2017, pet ref'd) (affirming denial of mistrial when limiting instruction was given because of witness' testimony regarding finding of "crystal meth" and gun in appellant's home despite limine order precluding evidence of extraneous offenses); *Francis v. State*, 445 S.W.3d 307, 320–21 (Tex. App.—Houston [1st Dist.] 2013) (holding mistrial properly denied because instruction to disregard cured reference to defendant's "criminal history"), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014); *Williams v. State*, 417 S.W.3d 162, 172–73 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding instruction to disregard cured prosecutor's voir dire comment about his opinion of defendant's guilt).

23

court's instructions." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (citing *Coburn*, 966 S.W.2d at 520). The presumption also is rebuttable "in the most egregious cases" where the statement at issue is "extremely inflammatory." *Griffin*, 571 S.W.3d at 419 (quoting *Williams v. State*, 417 S.W.3d 162, 176 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd)).

Appellant does not cite anything in the appellate record that indicates the jury failed to follow the court's instruction to disregard.[19] As such, he did not rebut the presumption that the jury followed the trial court's instruction. *See Hernandez*, 454 S.W.3d at 650 (affirming denial of mistrial, noting lack of evidence suggesting jurors failed to follow trial court's instructions to disregard statement regarding extraneous offenses); *Thrift*, 176 S.W.3d at 224 (affirming denial of mistrial after proper instruction to disregard was given by trial court, and noting appellant failed to rebut presumption that jury followed instruction); *Lazarine v. State*, No. 01-19-00982-CR, 2021 WL 5702182, at *11 (Tex. App.— Houston [1st Dist.] Dec. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in denying motion for mistrial, stating, "Lazarine does not explain, and we cannot discern, why the trial court's instruction to disregard was not effective to cure the alleged error."). In the absence of any evidence to the contrary, we conclude the trial judge's

---

[19] Appellant says in his brief, without elaboration, that "[a]n instruction to disregard would not have been adequate to address the harm and a mistrial was warranted."

24

instruction to disregard cured any error. This factor indicates the trial court did not abuse its discretion in overruling appellant's motion for mistrial.

### 3.     The Certainty of the Conviction Absent the Misconduct

After a review of the record, we conclude there were sufficient grounds to convict Appellant regardless of the objected-to testimony. Sergeant Holmes testified that Appellant ran from him at the bank, even after Sergeant Holmes identified himself as a police officer and ordered him to stop. Deputy Drake testified that when he saw the orange truck, he attempted to make a traffic stop because Appellant was speeding, but Appellant continued driving, disregarding Deputy Drake's lights and siren. He testified that Appellant's truck was "swerving through traffic" to avoid the several law enforcement vehicles that were following him with lights and sirens activated. The dashcam footage verifies the orange truck Appellant was driving led several law enforcement vehicles in pursuit on a busy freeway.[20] Both Deputy Drake and Deputy Callier testified that during the pursuit, Appellant drove as fast as ninety miles per hour. Deputy Callier testified that Appellant was "erratic" in his driving during the twenty- to twenty-five-minute chase.

Appellant concedes "there was sufficient evidence to support guilt." He further acknowledges he was the driver of the orange truck and "he was aware that

---

[20]     The dashcam video was muted, but it is clear when viewing it that the law enforcement vehicles' flashing lights were on.

he was being pursued by law enforcement." Appellant points to only two reasons the jury should have questioned Appellant's guilt: his use of turn signals during the chase, and his cooperation with law enforcement authorities after the chase.

It is not clear, as Appellant argues, that his use of turn signals and his failure to struggle or attempt to run after exiting the truck is "inconsistent with a person fleeing." While the use of turn signals during a chase may be unexpected, it is not enough to negate the overwhelming evidence of Appellant's having evaded arrest or detention. And we decline to hold that Appellant's cooperation with law enforcement personnel after leading them on a high-speed chase tempers the fact that he evaded them for twenty to thirty miles as they followed him in their vehicles at a rate up to ninety miles per hour with lights and sirens activated for at least twenty minutes.

That Appellant led multiple law enforcement units with lights and sirens on a high-speed chase for at least twenty minutes is compelling evidence of Appellant's guilt of the evading-arrest charge. Notwithstanding Appellant's use of his turn signals during the chase and his cooperation after the chase, this factor weighs against a finding that the trial court abused its discretion in denying Appellant's motion for mistrial.

Under these circumstances, it was within the trial court's discretion to deny Appellant's motion for mistrial.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Adams and Justices Countiss and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).