**Opinion issued January 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00047-CR

_____

## MARIO ISABEL VENTURA LOPEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 337th District Court
### Harris County, Texas
### Trial Court Case No. 1659799

---

## MEMORANDUM OPINION

Appellant Mario Isabel Ventura Lopez appeals his conviction for continuous sexual abuse of a child. *See* TEX. PENAL CODE § 21.02. In two issues, Lopez contends that the trial court erred by: (1) denying his motion for a mistrial, and (2) incorrectly assessing court costs. We affirm as modified.

**Background**

Because Lopez does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary to the disposition of this appeal. In August 2019, Lopez was living in an apartment in Houston and was known within the complex for playing soccer with the children and repairing their bicycles. D.M., a ten-year-old boy, also lived in the complex with his family. D.M.'s family shared the apartment with another family, who had a son around D.M.'s age (J.V.).

D.M.'s mother worked in a convenience store within the complex, and each day, D.M. visited her in the afternoon for coffee. One afternoon, when D.M. did not arrive, his mother became worried and began looking for him. As she was calling his name near Lopez's ground floor apartment, she saw the lights come on inside the apartment. She also observed a pair of adult legs and a pair of children's legs through the window. D.M.'s mother then had to return to her store because a customer was waiting.

Shortly thereafter, D.M.'s mother saw D.M. outside the store, but she grew suspicious when he appeared to be avoiding Lopez, who had gone inside the store. Later that evening, during his bath, D.M.'s mother checked D.M.'s body because she suspected something amiss with Lopez. She noticed his anus was red. D.M.'s mother asked him whether he had been at Lopez's apartment, but D.M. denied it. The next day, D.M.'s grandfather questioned D.M. about Lopez, and D.M. made an

2

outcry to his grandfather that Lopez had sexually abused him three times. D.M.'s grandfather discussed D.M.'s outcry with J.V.'s family and learned that Lopez had been sending inappropriate text messages to J.V.[1] D.M.'s grandfather then called the police, who arrested Lopez that evening.

That same night, D.M.'s mother took him for an examination at the Children's Assessment Center, where the examiner observed a bruise on D.M.'s penis consistent with sexual abuse. D.M. also reported three instances of sexual abuse to the examiner and stated that Lopez showed him pornography. Later, D.M. participated in two forensic interviews wherein he reiterated that he had been sexually abused by Lopez on three occasions.

Police later interviewed Lopez. During the interview, Lopez admitted that he sat D.M. in his lap while both were naked, touched D.M.'s anus, and masturbated while sitting next to D.M. Lopez claimed that D.M. asked Lopez to touch him. Lopez also admitted that he kissed J.M., another boy from the complex, but denied any other inappropriate contact with J.M. Lopez also admitted to the officer that he touched a third boy's (J.V.'s) penis over his clothing on one occasion.

Before trial, the trial court conducted a hearing pursuant to Texas Code of Criminal Procedure article 38.37 and heard testimony from three potential witnesses regarding alleged extraneous offenses Lopez committed against them, including

---

[1] The text messages were admitted into evidence.

J.M. and J.V. Ultimately, after hearing the testimony, the trial court ruled that J.V. and J.M. could testify.[2]

At trial, the jury heard testimony from numerous witnesses, including D.M., who described the three separate times Lopez sexually abused him. J.V. and J.M. also testified concerning the alleged sexual abuse they suffered from Lopez. Other witnesses included D.M.'s mother; his grandfather; the investigating officers; the sexual assault nurse examiner who examined D.M.; and the forensic interviewers who interviewed D.M., J.M, and J.V. Ultimately, the jury found Lopez guilty of continuous sexual abuse of D.M., and the trial court assessed punishment at fifty years' confinement in the Texas Department of Criminal Justice.

## Motion for Mistrial

In his first point of error, Lopez contends that the trial court erred in denying his motion for a mistrial. Specifically, Lopez argues that the trial court should have declared a mistrial after the jury heard an unredacted portion of Lopez's recorded interview, which he claims impermissibly referenced extraneous offenses.

At trial, the jury heard testimony from Detective Muñoz, a police officer assigned to the Special Victims Division, Crimes Against Children Unit, who

---

[2] *See* TEX. CODE CRIM. PROC. art. 38.37, § 2-a (stating that before evidence described by art. 38.37, § 2 may be introduced, trial court must "(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and (2) conduct a hearing out of the presence of the jury for that purpose").

4

interviewed Lopez in Spanish. During Detective Muñoz's testimony, the State played the audio recording of the interview, while periodically pausing the audio to ask Detective Muñoz questions about the interview's content. Both the prosecutor and the witness referred to the English transcription of the interview, which had been admitted into evidence and was being shown to the jury contemporaneously via projector.

As the audio played, the jury heard the following[3]:

Q:     ¿Y tú crees que va ser . . . 5 niños van a – van a decir cosas porque Mariano[4] le está diciendo eso?

The transcription of this statement read as follows:

| 256 | ¿Y tú crees que va ser... ███niños van a- van a decir cosas porque Mariano le está diciendo eso? | 1st Voice | And you think that it's going to be... ███ kids are going to- are going to say things because Mariano is saying that? |
|---|---|---|---|

Defense counsel interjected just after this portion of the interview was played and asked to approach the bench. He then moved to exclude the entirety of the rest of the audio on the basis that the jury heard impermissible testimony regarding "five other kids . . . that are making outcries" against Lopez, in violation of the court's ruling at the 38.37 hearing that the State would be allowed to elicit extraneous offense evidence regarding J.V. and J.M. only. After the trial court excused the jury, defense

---

[3]     The record also contained the Spanish transcription, as shown below.

[4]     Mariano is D.M.'s grandfather.

5

counsel moved for a mistrial, arguing that a curative instruction would not suffice because the jurors could not "unhear" the inadmissible evidence. The State countered that the error was not harmful, because the English transcript, which was being shown to the jury, was correctly redacted. The State suggested that it could further redact the audio and provide that version to the jury during its deliberations.

After a break for lunch, the trial court heard further argument regarding the audio. The State acknowledged that the reference to "cinco niños" ("five kids") should have been redacted to match the transcription, and that this was admittedly the State's mistake. The State again urged that the error could be corrected by a curative instruction because the severity of the misconduct was minimal—it was unclear whether any of the jurors understood the statement.[5] The State also argued that the statement itself was vague and unclear as to whether the "five kids" were complainants or just witnesses to Lopez's conduct.

In response, defense counsel argued that the statement was harmful because it suggested additional victims of Lopez, beyond those who had testified at trial. Counsel also contended that "cinco niños" was not a particularly complex phrase, and the jury likely understood the meaning. He further argued that the redaction in the transcript, which only omitted the typed numeral "5", was not sufficient; jurors

---

[5] There was no evidence in the record indicating whether any of the jurors understand Spanish.

would be able to decipher the omission. Lastly, defense counsel contended that any curative instruction would only serve to call the jury's attention to the harmful portion of the audio.

Ultimately, the trial court denied the motion for mistrial but ordered the following: (1) no further audio from the interview would be published to the jury, and the recording would not be sent back to the jury room during deliberations; (2) the State had to further redact the transcription to include additional lines following the reference in question, and only this updated transcription would be made available to the jury during deliberations; and (3) the Court would issue a curative instruction to the jury.

When the jury returned, the court gave the following instruction:

> Ladies and gentlemen of the jury, if you will please listen closely to the instruction that I am about to give you.
>
> Ladies and gentlemen of the jury, the written transcript of Mr. Ventura Lopez's interview with this officer is the only evidence going to be submitted to you regarding his interview. You are instructed and ordered to disregard the audio recording of Mr. Ventura Lopez's statement. You may not consider the audio recording of Mr. Ventura Lopez's interview with this officer, nor its contents for any reason whatsoever; and you may not discuss it in your deliberations.

The trial court then individually polled each juror and asked if they would be able to follow this instruction. Each juror answered in the affirmative. Additionally, the court's charge included an instruction that the jury was only to consider additional

7

alleged offenses if it believed beyond a reasonable doubt that Lopez committed these alleged offenses.

## A. Standard of Review

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* A mistrial is a remedy intended for extreme circumstances when prejudice is incurable and less drastic alternatives have been explored. *See id.* at 884–85. In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

## B. Analysis

Testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard unless it was so clearly calculated to inflame the minds of the jury or was "of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Whether a witness's improper

reference to an extraneous offense warrants a mistrial depends on the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Here, the vague reference to "cinco niños" does not constitute such improper testimony. Rather, the challenged testimony closely resembles the references that have been cured by an instruction to disregard. *See, e.g.*, *Ladd*, 3 S.W.3d at 571 (instruction to disregard cured witness's improper reference to defendant's multiple juvenile arrests); *Kemp*, 846 S.W.2d at 308 (witness's reference to defendant having "recently been released from the penitentiary" cured by instruction to disregard); *Nobles v. State*, 843 S.W.2d 503, 513–14 (Tex. Crim. App. 1992) (witness's statement that defendant "didn't want to go back to prison" cured by prompt instruction to disregard).

In *Hernandez v. State*, 454 S.W.3d 643 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd), this court considered whether the trial court erred in denying a mistrial following an accomplice witness's testimony in Spanish that the accomplice had committed two prior robberies with the defendant. The court determined that the record did not demonstrate that this testimony was "so highly prejudicial and incurable" that the trial court erred in denying the motion for mistrial. *Id.* at 650 (citing *Ocon*, 284 S.W.3d at 884). In so holding, the court observed that the trial court had polled the jurors, determined which of them understood the testimony, and then instructed those jurors not to share the information with the other jurors and not

9

to consider the evidence. *Id*. We also noted that jurors are presumed to follow instructions, and the appellant did not identify any evidence suggesting that the jurors did not follow the trial court's instructions. *Id.*; *see also Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Similarly, here, Lopez has not directed us to anything in the record which suggests that the jurors did not comply with the trial court's instruction to disregard the audio recording. In light of the limited nature of the "cinco niños" remark, D.M.'s testimony,[6] the additional evidence regarding extraneous offenses, and Lopez's own admissions concerning D.M., J.V., and J.M., we cannot say that the audio in question played a significant role in the jury's decision to convict Lopez. Nor was the audio reference to "cinco niños" so highly prejudicial and incurable that the trial court erred by denying the motion for mistrial. *See Hernandez*, 454 S.W.3d at 650; *see also Hawkins*, 135 S.W.3d at 77 (holding that courts should consider certainty of conviction absent misconduct). The trial court's instruction to disregard, the court's charge, and the fact that the jurors were only given a properly redacted version of

---

[6] We note here that a child complainant's testimony, standing alone, is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see also Mendoza-Navarro v. State*, No. 01-18-00706-CR, 2021 WL 967144, at *5 (Tex. App.—Houston [1st Dist.] Mar. 16, 2021, no pet.) (mem. op., not designated for publication) (applying foregoing authorities in context of continuous sexual abuse of child).

the transcription, suffced to cure any prejudice to Lopez resulting from the prosecution's mistake in playing the unredacted audio.[7]

We overrule Lopez's first issue.

## Assessment of Court Costs

In his second issue, Lopez argues that the trial court erred in its assessment of court costs. Lopez contends that the judgment reflects that the trial court assessed $290 in court costs, but only $185 is authorized by statute. *See* TEX. LOC. GOV'T CODE § 133.102 (authorizing $185 upon conviction of felony for offenses committed after January 1, 2020[8]). Though Lopez claims that the trial court did not indicate the basis for the additional $105 it assessed, the record contains an itemized bill of costs, which includes the following:

| | |
|---|---|
| Consolidated Court Cost – State | $185.00 |
| Consolidated Court Cost – Local | $105.00 |

As the State points out, together these amounts total $290. However, the State also acknowledges that by statute, the trial court should have assessed $133 in court costs,

---

[7]    The prosecution explained that it made several rounds of redactions to the audio and written transcription in an effort to comply with the trial court's 38.37 ruling and admitted that it missed the "cinco niños" reference in the final redaction of the audio. The prosecution received the final audio redactions during trial and did not review the final version before playing it to the jury. Apparently, a prior version of the audio did redact this comment.

[8]    As explained below, because of the date of the offense at issue, the trial court should have assessed court costs in the amount of $133, not $185.

11

not $185. *See Wiggins v. State*, 622 S.W.3d 556, 561 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (explaining history of amendment of Texas Local Government Code section 133.102, particularly, 2019 amendment increasing court cost for felony from $133 to $185 for offenses committed on or after January 1, 2020). It is undisputed that the offense at issue occurred in 2017, prior to the effective date of the legislative change to section 133.102. Accordingly, we sustain this part of Lopez's second issue and modify the trial court's judgment to reflect a decrease of $52 in assessed court costs. *See id.*

Lopez also argues that the trial court erred in not conducting an inquiry on the record regarding his ability to pay court costs. *See* TEX. CODE CRIM. PROC. art. 42.15(a-1) (providing that "during or immediately after imposing a sentence . . . a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs"). Lopez asks that we remand this case for such an inquiry.

The Tyler Court of Appeals recently considered an identical argument in *Sloan v. State*, 676 S.W.3d 240 (Tex. App.—Tyler 2023, no pet.). There, the court first noted that even if it assumed that the trial court abused its discretion in failing to conduct such an inquiry, remand was only appropriate if the trial court's error "prevents the proper presentation of the case to [the appellate] court and the trial court can correct its action or failure to act." *Id.* at 241 (citing TEX. R. APP. P.

44.4(a)). The court pointed out that the appellant's only contention was that the ability-to-pay inquiry did not occur on the record. *Id.* at 242. The appellant did not allege that the trial court's failure to strictly comply with the statute prevented him from raising or developing a claim on appeal. *Id.*

Further, the court observed that the result of the ability-to-pay inquiry (had it occurred) was already apparent from the record, because the trial court's judgment required appellant to pay his fines and court costs "[u]pon release from confinement." *Id.* The court determined that this language comported with the second portion of article 42.15(a-1), which states: "If the court determines that the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs, the court shall determine whether the fine and costs should be . . . required to be paid at some later date." *Id.*; TEX. CODE CRIM. PROC. art. 42.15(a-1)(1). Therefore, the *Sloan* court determined that because the trial court ordered that appellant's fines were due to be paid upon his release, "it must have determined that [the appellant] did not have sufficient resources or income immediately to pay all or part of the fine and costs." 676 S.W.3d at 242 (citing TEX. CODE CRIM. PROC. art. 42.15(a-1)(1)). The court concluded that because appellant did not challenge the trial court's order that he pay the fine and costs upon release, any remand for an ability-to-pay inquiry would be "gratuitous," given that the ultimate outcome from such an inquiry was ostensible from the record. *Id.*

13

Here, the trial court's judgment similarly provides that "[u]pon release from confinement, the Court **ORDERS** Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or to make arrangements to pay any fines, court costs, reimbursement fees, and restitution due." As in *Sloan,* Lopez does not challenge this portion of the trial court's judgment. Therefore, we likewise conclude that the trial court "must have determined that [Lopez] did not have sufficient resources or income immediately to pay all or part of the fine and costs," and as such, remand for an ability-to-pay inquiry "would amount to an unnecessary exercise and a waste of judicial resources."[9] *See id.* We overrule the latter part of Lopez's second issue as it pertains to the ability-to-pay determination.

## Conclusion

We affirm the trial court's judgment as modified.

Amparo Monique Guerra
Justice

---

[9] As the *Sloan* court observed, Lopez is not without recourse if, upon his release, he is unable to pay the fines and court costs. At that time, he can seek relief from the trial court. *See id.* at 242 n.2; *see also* TEX. CODE CRIM. PROC. art 43.035(a), (c) (providing that if defendant notifies court of difficulty paying fines and costs in compliance with court's judgment, court shall conduct hearing to determine whether that portion of judgment imposes undue hardship on him; if it determines such hardship exists, court shall consider whether fine and costs should be satisfied through one or more methods outlined in Texas Code of Criminal Procedure, article 42.15(a-1)). The trial court retains jurisdiction to make such a determination. *See* TEX. CODE CRIM. PROC. art. 43.035(e).

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).